**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

PAMELA B.,

                  Plaintiff,

     v.

MARTIN O'MALLEY,
Commissioner of Social Security,

               Defendant.

Case No. 23 C 5221

Magistrate Judge Sunil R. Harjani

**MEMORANDUM OPINION AND ORDER**

Plaintiff Pamela B.[1] seeks to overturn the Commissioner of Social Security Administration's decision denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act. Pamela requests reversal and remand [12], and the Commissioner moves for summary judgment affirming the decision [18]. For the reasons discussed below, the Court affirms the ALJ's decision.

**Background**

Pamela filed a DIB and SSI application on August 29, 2019, and December 6, 2019, alleging an onset date of May 15, 2015. R. 877. Pamela's claims were initially denied by the ALJ and the Appeals Counsel. *Id.* at 982-83. Pamela then appealed to this Court. *Id.* at 976-79. Upon review, the Court granted Pamela's request for reversal and remand finding the ALJ had not properly considered, in either the Paragraph B analysis or the RFC assessment, the combined impact of Pamela's mental impairments with her other severe and non-severe RFC impairments. *Id.* at 981-92. Therefore, the Court ordered the ALJ to "reevaluate Pamela's RFC, considering the

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by first name and the first initial of last name or alternatively, by first name.

interaction of her many mental and physical problems on her ability to work, and explain the basis of her findings." *Id.* at 992. Additionally, "[w]ith the assistance of a VE, the ALJ shall determine whether Pamela can perform her past relevant work or any other jobs that exist in significant numbers." *Id.* Upon remand, the state agency found Pamela to be disabled as of October 7, 2018, based on a subsequent application. *Id.* at 877. Thus, the Appeals Counsel instructed the ALJ to reevaluate the claim for the reviewable period of May 15, 2015, through October 6, 2018. *Id.*

Pamela completed high school in 1979. *Id.* at 213. She previously worked as a nurse assistant, claims clerk, and court clerk prior to the alleged onset of her disability. *Id.* at 213, 891. Pamela initially alleged disabilities due to: disorders of muscle, ligament and fascia; disorders of back - discogenic and degenerative; and affective disorders. Doc. [12] at 1; R. 68. Following remand, the ALJ held a second hearing on October 25, 2021, attended by Pamela, counsel and VE Glee Ann L. Kehr. *Id.* at 877, 908. On December 6, 2021, the ALJ found Pamela not disabled for the period of May 15, 2015 through October 6, 2018. *Id.* at 877-900. The opinion followed the required five-step process. 20 C.F.R. § 404.1520. The ALJ found Pamela had the following severe impairments: degenerative disc disease of the lumbar spine, with stenosis status post motor vehicle accident; degenerative joint disease of the bilateral shoulders status post rotator cuff tear; irritable bowel syndrome; Crohn's disease; chronic obstructive pulmonary disease (COPD); and right hip trochanteric bursitis.[2] R. 880-88. The ALJ noted Pamela had been diagnosed with hypertension, gastroesophageal reflux disease, and urinary frequency, although treatment was conservative, symptoms were controlled with medication, and hearing testimony did not allege functional limitations. *Id.* at 880-81. The ALJ also found Pamela had a history of gastritis, hemorrhoids,

---

[2] Trachanteric bursitis is the irritation of the small, fluid-filled sacs that cushion the bones and tissues around your hip. *See Trochanteric Bursitis*, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/4964-trochanteric-bursitis (last visited Jan. 28, 2024).

colon polyps, and colon cancer, though the record was void of evidence showing these conditions were severe. *Id.* at 881. The ALJ further reviewed that Pamela struggled with chewing due to dentures but found no evidence this imposed more than minimal vocationally functional limitations. *Id.* Additionally, the ALJ discussed Pamela's testimony regarding rotator cuff tears in 2013 and 2015 and considered this with the degenerative joint disease of the bilateral shoulders in reaching the RFC limitations. *Id.* at 881-82.

Regarding Pamela's mental impairments, the ALJ found record evidence of depression, bipolar, attention-deficit/hyperactivity disorder (ADHD), post-traumatic stress disorder (PTSD), and a history of substance abuse. *Id.* at 882. However, as outlined in the ALJ's opinion, these conditions "did not cause more than minimal limitations in [Pamela's] ability to perform basic mental work activities." *Id.* at 882. The ALJ concluded Pamela did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. *Id.* at 888-89. The ALJ specifically considered physical listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 3.02 (chronic respiratory disorders), and 5.06 (inflammatory bowel disease). *Id.* Under the "Paragraph B" analysis, the ALJ found Pamela had a mild limitation in concentrating, persisting, or maintaining pace. *Id.* at 884. The ALJ found no limitations in understanding, remembering, or applying information, interacting with others, and adapting or managing oneself. *Id*. at 883-85.

The ALJ determined Pamela had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) with the following limitations: (1) never climb ladders, ropes, or scaffolds; (2) never crawl; (3) occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; (4) could frequently reach in all directions bilaterally, except only occasionally reach overhead bilaterally; (5) needed to avoid concentrated exposure to vibration and work on flat even surfaces; (6) needed

3

to avoid exposure to unprotected heights, not work around hazardous machinery, avoid concentrated exposure to temperature extremes of heat and cold, humidity, wetness, and pulmonary irritants; (7) could do no commercial driving; and (8) occasionally operate foot controls bilaterally. *Id.* at 889-98. For the mental aspects of the RFC, the ALJ found Pamela's mild assessment of concentration, persistence, or maintaining pace did "not warrant further mental work-related limitation assessment" as the treatment and medication management supported that Pamela could perform past semi-skilled work. *Id.* at 895. After posing hypotheticals to the VE, the ALJ concluded Pamela could perform past relevant work as a claims examiner/claims clerk, and identification clerk. *Id.* at 898-900. As a result, the ALJ found Pamela not disabled. *Id.* at 900. The Appeals Council denied Pamela's request for review. *Id.* at 874-76.

**Discussion**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform their former occupation; and (5) whether the claimant is unable to perform any other available work in light of their age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled.

A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quotation marks omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, --- U.S. ----, 139 S.Ct. 1148, 1154, 203 L.Ed.2d 504 (2019) (quotation marks omitted). In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (quotation marks omitted). Nevertheless, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

In support of her request for reversal and remand, Pamela argues the ALJ: (1) did not properly evaluate her mental impairments; and (2) failed to properly evaluate the impact of her mild limitations in concentration, persistence, or pace. *See generally* Doc. [12]; Doc. [21]. Having considered these arguments and the record, the Court finds the ALJ did not commit reversible error as the ALJ's decision is supported by substantial evidence.

## I. Mental Impairment Assessment

For her first contention, Pamela argues the ALJ did not account for her mental impairments by: (1) finding no limitations in interacting with others, understanding, remembering, and applying information, and adapting and managing oneself; (2) relying on the ALJ's own opinions and attributing the State agency psychological consultants "less weight;" (3) failing to cite and explain

how new evidence of mental impairments, including ADHD, depression, anxiety, and bipolar disorder, were considered. Doc. [12] at 2-6; Doc. [21] at 1-8. The Court disagrees.

By way of background, this Court previously reversed and remanded to the ALJ, ordering the ALJ to "reevaluate Pamela's RFC, considering the interaction of her many mental and physical problems on her ability to work, and explain the basis of her findings." *Id.* at 992. The relevant period for review was May 15, 2015, through October 6, 2018. *Id.* at 877. After a second hearing and review of additional evidence, the ALJ determined Pamela did not meet her burden of proving that her mild mental limitations caused work restrictions. *Id.* at 877-900. The ALJ found Pamela's treatment was consistent and unchanged with medication management and remained consistent with the light RFC assessment. *Id.* at 896. Thus, Pamela was able to perform past semi-skilled level work. *Id.* at 895.

The RFC is the most physical and mental work that Pamela can perform despite her limitations. 20 C.F.R. § 404.1545(a)(1); *Madrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). An ALJ assesses an RFC based on all relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). In reaching their RFC assessment, the ALJ must "articulate at some minimal level [their] analysis of the evidence." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Ultimately, "an ALJ need only include limitations [in the RFC] that are supported by the medical record." *Reynolds*, 25 F.4th at 473. An ALJ has the "final responsibility" for determining a claimant's RFC. *See* 20 C.F.R. § 404.1527(d)(2); *Fanta v. Saul*, 848 F. App'x 655, 658 (7th Cir. 2021). Additionally, "[t]he court applies a common-sense reading to the entirety of an ALJ's decision." *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019). In doing so, the Court reads "the ALJ's decision as a whole." *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004). "[An] ALJ is not required to mention every piece of evidence." *Combs v. Kijakazi*, 69 F.4th 428,

435 (7th Cir. 2023). Instead, an ALJ must minimally articulate their reasoning. *Rice*, 384 F.3d at 371 ("An ALJ need only minimally articulate his or her justification for rejecting or accepting specific evidence of a disability.") (cleaned up); *see also Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (minimal articulation is "a very deferential standard that we have, in fact, deemed 'lax'").

The Court first addresses the ALJ's finding that Pamela had no limitations in: (1) interacting with others; (2) understanding, remembering, and applying information; and (3) adapting and managing oneself. Doc. [12] at 2-4; Doc. [21] at 1-2, 4-7. The question the Court must address is whether the ALJ's decision is supported by substantial evidence. *Poyck v. Astrue*, 414 F. App'x 859, 861 (7th Cir. 2011).[3] When assessing an individual's RFC and mental abilities, including how impairments and symptoms may cause mental limitations in the workplace, the ALJ first assesses the nature and extent of the mental limitations and restrictions, and then determines the RFC. *See* 20 C.F.R. § 404.1545(c). Here, the ALJ reviewed each of the broad function areas set out for evaluating mental disorders. 20 C.F.R. § 404, Subpt. P, App. 1. First, the ALJ analyzed the area of understanding, remembering, or applying information and found no limitation. R. 883.[4]

---

[3] Pamela cites *Carradine v. Barnhart*, 360 F.3d 751, 756 (7th Cir. 2004) and *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) for the propositions that decisions cannot be upheld when it is based on contradictions. Doc. [12] at 4. These cases are inapplicable. While *Carradine* found contradictions in the ALJ's weighing of daily physical activities and the ability to work eight hours, here, the ALJ is not discounting or improperly analyzing daily activities regarding Pamela's ability to work but instead looking at if her mental symptoms would pose an impairment. *See Carradine*, 360 F.3d at 755-56; R. 882-88. Further, in *Parker* the ALJ discounted the plaintiff's statements of disabling pain. *Parker*, 597 F.3d at 923-24. In this case, the ALJ reviewed all of Pamela's statements, medical records, and found there were no limitations in her ability to interact with others, understand, remember, and apply information, and adapt and manage herself. R. 882-88. Unlike in *Parker*, the ALJ went through each Paragraph B area and the record explaining the evidence that exhibited Pamela was capable of normal functioning. *Id.*

[4] Pamela argues mild mental limitations could impact her past work, as it was semi-skilled and skilled in nature. Doc. [12] at 3 (*citing Lawrence J. v. Saul*, 2020 WL 108428, at *3 (N.D. Ill. Jan. 9, 2020)); Doc. [21] at 7. However, as noted in *Lawrence*, "by no means is it a given that a mild limitation in mental functioning will impact a claimant's ability to secure employment." *Id.* (*citing Sawyer v. Colvin*, 512 F. App'x 603, 611 (7th Cir. 2013) (workers markedly limited in their ability to understand, remember, and

The ALJ explained there was "no evidence of an intellectual disability or learning disorder," and "no cognitive testing in the record to support even mild limitations in this area." *Id.* The ALJ cited record evidence that Pamela demonstrated an intact memory, ability to provide information, follow instructions, respond to questions, and that Pamela was alert and oriented at medical appointments. *Id.* (*citing* 284-85, 287, 403, 406, 500, 533, 544-45). Pamela also did not require a chaperone. *Id.* (*citing* 1642). The ALJ weighed Pamela's testimony that she had poor memory, lost items, and forgot medications (R. 883), with her normal and coherent thought process, and lack of complaints or perceptual difficulties (*id.* (*citing* 379-87, 824)). The ALJ further observed that Pamela cared for her neighbor's dog, including remembering feeding and walking schedules, cared for her son by cooking and washing laundry, and was alert and focused enough to drive. *Id.* (*citing* 510, 1150). Second, the ALJ found no limitation in interacting with others. *Id.* at 884. The ALJ compared Pamela's reported mood swings, irritability, anxiety, and panic attacks with her attendance at appointments, where she was described as polite and cooperative. *Id.* The ALJ further examined Pamela's involvement in the community, attendance at church and support groups, living with her son and boyfriend, and interaction with her neighbor while caring for their dog.[5] *Id.* (*citing* 222-32, 284-91,[6] 500, 503, 505, 510, 520, 524, 528, 533, 537, 541, 1150). Third, the ALJ found no

---

follow detailed instructions can perform jobs requiring level 3 reasoning development)). An ALJ need only, "evaluate the effect of any mild limitations on the RFC" which the ALJ did in this case. *Id.*; *see* R. 882-88.

[5] In her reply brief, Pamela argues the ALJ failed to discuss how interacting with her neighbors to care for their dog related to "interacting with others in a full-time competitive workplace" and that the ALJ failed to mention how this impacted their decision. Doc. [21] at 5-6. This argument is unpersuasive. As outlined above, the ALJ weighed Pamela's testimony about mood swings, irritability, anxiety, and panic attacks, with the record evidence where no problems interacting with others was observed and Pamela reported to medical professionals an ability to interact with others in the community. R. 884.

[6] As outlined in Pamela's brief, the period at issue is May 15, 2015, to October 6, 2018. Doc. [12] at 2. The Court observed the ALJ, at times, cites to the entirety of Exhibit 1F (R. 284-291) which has six visits outside of the timeframe. R. 286-91 (visits in 2014, February 2015, and March 2015). However, the ALJ relied on other evidence in support, including the visits from Exhibit 1F that occurred within the period.

limitation in adapting or managing oneself. *Id.* at 885. The ALJ reviewed Pamela's difficulties grooming and how they were tied to her physical impairments. *Id.* The ALJ discussed how records reflected Pamela was often appropriately groomed, and denied symptoms of depression, stress, irritability, anger, reduced concentration, mood swings, and nervousness. *Id.* (*citing* 500, 822-23). The ALJ also found Pamela could maintain focus, control impulse, and had good judgment. *Id.* (*citing* 824). The ALJ further reviewed Pamela's psychotherapy attendance and substance abuse recovery, along with her ability to help her son, as well as manage her appointments and finances without assistance. *Id.* (*citing* 499-546, 820-824, 1145-58,[7] 1642). The ALJ concluded that, taken together, the testimony and record evidence supported no mental RFC limitations. R. 882-88, 895-96. While Pamela takes issue with the ALJ's finding that her mental impairments did not impose significant work-related limitations, the ALJ's assessment is supported by substantial evidence. *See Schmidt v. Barnhard*, 395 F.3d 737, 745 (7th Cir. 2005) (ALJ's assessment that panic attacks imposed no more than minimal work limitations was supported by substantial evidence as they were controlled with medication); *see also Johnson v. Kijakazi*, 2021 WL 3885535, at **3-4 (E.D. Wis. Aug. 31, 2021) (affirming ALJ who on remand found a moderate rather than marked limitation in concentration, persistence, or pace, based on substantial evidence). Here, the ALJ reviewed evidence from numerous sources, accounted for Pamela's personal testimony, and assessed the nature and extent of the mental limitations and restrictions. R. 880-88; *see* 20 C.F.R. § 404.1545(c). After a wholistic analysis of each mental functioning area, the ALJ determined no mental limitations were necessary in the RFC, consistent with the State Agency consultants'

---

[7] Pamela further faults the ALJ for relying on evidence available for the first decision and not additional records. Doc. [12] at 5. However, the ALJ cited to evidence from all parts of the record including the additional documents (Exhibits 21F-32F, R. 1135-1666). As discussed in more detail below, this argument does not hold water.

finding. R. 882-88.  As the ALJ explained their reasoning for their Paragraph B holdings and supported the analysis with substantial evidence, the Court does not find cause to reverse and remand.

Next, the Court reviews the ALJ's support for the mental impairment determination. Pamela contends when reevaluating the mental limitations, the ALJ discounted all other opinions,[8] in effect leaving a dearth of expert opinions. Doc. [12] at 4-5;[9] Doc. [21] at 1-2.  In general, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007).  An opinion from a medical source on a claimant's RFC may be rejected "with 'an accurate and logical bridge' between the evidence and the ALJ's decision." *Jeske v. Saul*, 955 F.3d 583, 593 (7th Cir. 2020).  An ALJ need not credit the opinions of the agency's own doctors in the face of other compelling evidence, "but rejecting the opinion of an agency's doctor that supports a disability finding is 'unusual' and 'can be expected to cause a reviewing court to take notice and await a good explanation.'" *Jones v. Saul*, 823 F. App'x 434, 439 (7th Cir. 2020) (cleaned up);

---

[8] It is unclear from Pamela's argument if she is also alleging the ALJ "played doctor" or failed to have a medical expert review the new records. Doc. [12] at 4-5 (*citing Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) *among other cases* for the notion the ALJ cannot interpret medical evidence on their own); Doc. [21] at 1-2.  First, as these arguments have not been properly developed, they are deemed waived. *See Horr v. Berryhill*, 743 F. App'x 16, 20 (7th Cir. 2018) (perfunctory and underdeveloped arguments are waived). Even so, the ALJ relied in part on the State Agency consultants, and, when deviating from the State Agency consultants' opinion, expressly explained the evidence supporting their conclusion. R. 885-86, 896-97. Additionally, nowhere in the hearing, record, or Pamela's briefs does she raise having a medical expert review the new documents. *See generally* Docs. [12][21].

[9] Pamela asserts that "when the Court directed the ALJ to reevaluate the impact of her mental limitations, it did not indicate the record supported fewer mental limitations." Doc. [12] at 5.  The Court notes it ordered the ALJ to "reevaluate Pamela's RFC, considering the interaction of her many mental and physical problems on her ability to work, and explain the basis of her findings." *Id.* at 992.  Nowhere did the Court indicate how the ALJ should rule or dictate that a finding of lower mental limitations would not be supported by evidence. *Id.*  Instead, the Court ordered the ALJ to consider Pamela's mental limitations in crafting the RFC. *Id.*  Here, the ALJ weighed the evidence, explained their findings, and crafted the RFC accordingly. R. 877-900.

*Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). However, an ALJ has the "final responsibility" for determining a claimant's RFC. *See* 20 C.F.R. § 404.1527(d)(2); *Fanta*, 848 F. App'x at 658. Here, the ALJ gave "significant weight to the State Agency psychological consultants at the initial and reconsideration levels." R. 885 (*citing* 64-75, 77-91). The State Agency consultants found no more than a mild limitation for Pamela's mental functioning. *Id.* Moreover, as outlined by the ALJ, the State Agency consultants did not include any mental limitations in their suggested RFC, as Pamela did not report any "functional limitations due to [her] non-severe mental impairments" and could "perform all the typical tasks of [an] adult independent living without significant limitations for mental impairments." R. 885 (*citing* 85). Upon remand, the ALJ re-reviewed the record, including new evidence. *Id.* The ALJ found the additional evidence exhibited "repeatedly unremarkable mental status examinations." *Id.*; *see also* R. 883 (lack of cognitive testing, intellectual disability, or learning disorder warranting limitations), R. 883 (*citing* 379-87, 510, 824 (intact memory, alert, orientated, coherent, normal thought process)), R. 884 (*citing* 222-32, 284-91, 500, 503, 505, 510, 520, 524, 528, 533, 537, 541 (involvement in the community and ability to interact with others)), R. 885 (*citing* 499-546, 820-24, 1145-58, 1642 (ability to maintain focus, impulse control, exercise good judgment, take care of neighbors' dog, manage finances, and attend appointments independently)). As a result of the additional evidence, the ALJ gave the State Agency consultants "less weight" as Pamela "receive[d] regular mental health treatment and medication management, with no change in medication or exacerbation of symptoms." R. 885. Even still, the ALJ found the State Agency consultants' opinions to be "generally consistent with the record as a whole, particularly, the repeatedly unremarkable mental status examinations." *Id.* The ALJ does not discount all opinion evidence but considers the medical opinion evidence (relying on the State Agency consultants)

11

and the record in coming to their mental RFC determination. *Id.* at 882-88; *see also Lauren B. v. Kijakazi*, 2023 WL 2306938, at *12 (N.D. Ill. Mar. 1, 2023) ("[T]he ALJ adequately explained his findings that Claimant's mild limitation in concentration, persistence, and pace did not require a corresponding RFC restriction. Namely, the ALJ relied on the opinions of the state agency psychological constants… [who] recommended no mental RFC restrictions."). As the ALJ provided a logical bridge between the evidence, the opinions, and the RFC determination the Court finds no cause for remand.

Pamela further alleges the ALJ failed to cite and explain how new evidence of mental impairments, including ADHD, depression, anxiety, and bipolar disorder, were considered. Doc. [12] at 6-7; Doc. [21] at 2-8. This is contradicted by the ALJ's opinion. As stated above, "[t]he court applies a common-sense reading to the entirety of an ALJ's decision." *Winsted*, 923 F.3d at 478. In doing so, the Court reads "the ALJ's decision as a whole" and an ALJ "is not required to mention every piece of evidence." *See Rice*, 384 F.3d at 370 n.5; *Combs*, 69 F.4th at 435. While an ALJ may not ignore an entire line of evidence that is contrary to their ruling, they are "not required to address every piece of evidence." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Combs*, 69 F.4th at 435; *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) ("[A]n ALJ is not required to list each document [they] considered, but must only weigh the relevant evidence."). The ALJ considered all of Pamela's medically determinable impairments when assessing her RFC. R. 882. That included her depression, bipolar, ADHD, PTSD, and substance abuse history. *Id.* The ALJ expressed that Pamela was stable on medication for numerous years. *Id.* at 882-83. While the record showed instances of Pamela being depressed and irritable, the ALJ found this was not consistent. *Id.* (*citing* 499-546). The ALJ also noted Pamela's ADHD symptoms were controlled, only worsening when medication wore off, that her anxiety and mood were stable, and her bipolar

12

was in remission. *Id.* (*citing* 513, 515-16); R. 886 (*citing* 822, 824); R. 886 (*citing* 500 (baseline mental status exam on July 29, 2016, showed Pamela had been stable for many years)); R. 895 (*citing* 503, 505, 510-516, 820-24, 1145-58 (consistent mental health treatment with unchanged medications and no reported side effects)). While Pamela alleges the evidence exhibits a worsening ADHD, PTSD, anxiety, and depression, that is not supported by the record. Doc. [12] at 6 (*citing* R. 1145-58 (showing stable symptoms, mild severity, and good symptom management with medications)). The ALJ directly reviewed the "new evidence" that Pamela argued was relevant, and concluded it demonstrates consistent mental health treatment with impairments in remission. *Id.*; R. 895 (*also citing* R. 1145-58 exhibiting stable mental health with impairments successfully managed with medications). In her reply brief, Pamela further contends the Commissioner "failed to grapple with the full breadth and character of [the] records" citing to portions of the records where Pamela had a "Global Assessment of Functioning (GAF) score of 55 commensurate with moderate difficulty in social and occupation functioning," as well as examinations noting depressed, anxious, and sad moods. Doc. [21] at 2-4 (*citing* R. 285, 305, 309, 500, 501, 509, 513, 524, 822-34, 1149-50, 1160). The law does not require an ALJ to determine an individual's disability based on the GAF score. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (affirming ALJ's decision not to include RFC limitations for depression as it was controlled with medication). Moreover, the ALJ directly cites Pamela's records with her GAF score and grapples with this evidence in coming to their conclusion. *See* R. 882-88. The ALJ compares the mental health diagnoses with the stability of the symptoms due to successful treatment. *Id.*[10] Here, the ALJ did not ignore an entire line of contrary evidence but reviewed the

---

[10] Pamela argues the ALJ wrongfully cited that certain mental impairments were "in remission" which was not supported by the evidence. Doc. [21] at 4. The record evidence belies this argument as the ALJ cites to medical visits which specifically note "[d]iagnosis of [b]ipolar disorder, currently in remission." *See, e.g.*, R. 882 (*citing* 503, 505).

record, including the new evidence, and concluded no mental RFC limitations were supported. The Court follows the ALJ's reasoning, which is supported by the record, and will not reweigh the evidence. *Reynolds*, 25 F.4th at 473. The ALJ properly weighed all of the evidence, including new evidence, in coming to their conclusion.

## II. Concentrating, Persisting, and Maintaining Pace Assessment[11]

For her second contention, Pamela contends that the ALJ failed to properly evaluate the impact of her mild limitations in concentration, persistence, or pace in the RFC. Doc. [12] at 5-11; Doc. [21] at 8-11. Here, Pamela contends the ALJ: (1) mischaracterized or omitted evidence, including Pamela's ADHD diagnosis; (2) failed to account for off-task time, by ignoring the opinion of treating psychiatric nurse practitioner Cecelia Berumen; (3) improperly attributed RFC limitations to a combination of mental and physical limitations; and (4) deviated from the remand order. *Id.*

As outlined above, the RFC is the most physical and mental work that Pamela can perform despite her limitations. 20 C.F.R. § 404.1545(a)(1); *Madrell*, 25 F.4th at 516. An ALJ assesses an RFC based on all relevant medical and other evidence and must "articulate at some minimal level [their] analysis of the evidence." 20 C.F.R. § 404.1545(a)(3); *Zurawski*, 245 F.3d at 888. However, "an ALJ need only include limitations [in the RFC] that are supported by the medical record" and the ALJ has "final responsibility" for determining a claimant's RFC. *See* 20 C.F.R. § 404.1527(d)(2); *Reynolds*, 25 F.4th at 473. Additionally, the ALJ's evaluation of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. Under that regulation, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or

---

[11] Pamela raises arguments concerning the ALJ's discussion regarding concentration, persistence, or pace in the section on mental functioning. *See* Doc. [12] at 5-6. To better address the arguments raised in a succinct fashion, the Court addresses all arguments regarding concentration, persistence, or pace in this section.

prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ need only articulate "how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). The regulations direct the ALJ to consider the persuasiveness of medical opinions using several listed factors. See 20 C.F.R. § 404.1520c(a), (c). While an ALJ must explain how they considered the factors of supportability and consistency in their decision, they are not required to explain how they considered the other factors. 20 C.F.R. § 404.1520c(b)(2).

Initially, Pamela contends the ALJ failed to include or improperly characterized evidence, by leaving out her ADHD diagnosis when reviewing her ability to maintain concentration, persistence, or pace. Doc. [12] at 5-6; Doc. [21] at 10-11. As detailed above, an ALJ need only include RFC limitations that are supported by the record. *See* 20 C.F.R. § 404.1527(d)(2); *Kimberly M. v. Kijakazi*, 2022 WL 2105892, at *5 (N.D. Ill. June 7, 2022) (affirming ALJ's determination that ADHD and anxiety caused "no more than a mild limitation" and were treated with medication, thus no mental RFC limitations were necessary because impairments had no effect on Plaintiff's ability to work). Here, as discussed, the ALJ considered all of Pamela's mental impairments when assessing her RFC, including Pamela's ADHD. R. 882-88. The ALJ began by reviewing Pamela's mental health history. Pamela was stable on medication for numerous years. *Id*. at 882-83. While the ALJ found occasions in the record of Pamela being depressed and irritable, the ALJ acknowledged these and explained that they were not consistent. *Id.* (citing 499-546). The ALJ also noted Pamela's ADHD symptoms were controlled, only worsening when medication wore off, that her anxiety and mood were stable, and her bipolar was in remission. *Id*. (*citing* 513, 515-16); R. 886 (*citing* 822, 824); R. 886 (*citing* 500 (mental status exam showed Pamela stable for many years)); R. 895 (*citing* 503, 505, 510-516, 820-24, 1145-58 (consistent

mental health treatment with unchanged medications and no reported side effects)).  When evaluating the function area of concentrating, persisting, or maintaining pace during the Paragraph B analysis, the ALJ discussed Pamela's reported poor concentration, along with records where Pamela denied concentration deficiencies. *Id.* at 884 (*citing* 222-32, 822-23).  The ALJ also reviewed records where Pamela stated she could manage her finances, attend appointments, help her son, and care for a neighbors' pet. *Id.* (*citing* 500, 511-12, 824, 1150, 1582).  Moreover, the ALJ recognized Pamela had received regular mental health treatment and medication management. *Id.*  Later, when assessing the RFC, the ALJ again analyzed Pamela's mental impairments, including that her mental health treatment and medications were unchanged, and there was no record evidence exhibiting an exacerbation of symptoms. *Id.* at 895 (*citing* 503, 505, 510-516, 820-24, 1145-58 (also noting no medication side effects)).  Thus, the ALJ concluded Pamela was able to do past semi-skilled level work. *Id.* at 898.  The ALJ minimally articulated their analysis, that "the record shows ongoing and consistent mental health treatment which is unchanged and also shows point where impairments [were] discussed as in remission" and supports it with substantial evidence. *Id.* at 895.  As the ALJ includes and does not improperly characterize evidence regarding Pamela's concentration, persistence, or pace, the Court will not remand.

Second, Pamela argues the ALJ failed to account for her off task time, ignoring opinions from treating psychiatric nurse practitioner (NP) Cecelia Berumen. Doc. [12] at 7-10; Doc. [21] at 8-11.  Again, an ALJ need only include RFC limitations supported by the record. *See* 20 C.F.R. § 404.1527(d)(2); *Kimberly M.*, 2022 WL 2105892, at *5 (affirming ALJ's lack of mental RFC limitations as impairments had no effect on Plaintiff's ability to work).  Further, an ALJ may discount a physician's opinion when it is contradicted by other substantial evidence in the record. *Anders v. Saul*, 860 F. App'x 428, 433 (7th Cir. 2021) (affirming ALJ's decision to assign little

weight the physician's opinion and great weight to the opinions of the agency doctors). As previously articulated, it is not for this Court to reweigh the evidence the ALJ considered. *Reynolds*, 25 F.4th at 473. As the ALJ noted, Ms. Berumen stated Pamela had "poor memory, sleep disturbance, personality change, emotional liability, panic attacks, irrational fears, disorientation, poor concentration, obsessive thoughts, appetite disturbance, anhedonia, and loss of intellectual ability." R. 885-86. Therefore, Ms. Berumen concluded Pamela would be absent from work over three days a month, off task 20% of the workday, and have marked limitations in nearly all areas of mental functioning. *Id.* However, the ALJ found that Ms. Berumen's contemporaneous treatment notes did not support the disabling limitations assessed. *Id.* at 886. The ALJ explained that the treatment records did not support Ms. Berumen's level of limitations as they exhibited repeatedly normal mental status examinations. *Id.* at 886 (*citing* 285, 304-77, 379-87, 499-546, 820-24, 1145-58). Further, the ALJ observed no cognitive testing in the record to support Ms. Berumen's finding of loss of intellectual ability. *Id.* Additionally, the ALJ reviewed the record which exhibited that on the date Ms. Berumen drafted the medical source statement, Pamela was simply getting medication refills. *Id.* (*citing* 822). Instead, the ALJ noted Pamela described her symptoms as rare/mild, that she felt good, and was stable on her current medications. *Id.* (*citing* 824) (mental status exam with intact orientation, eye contact, thought processes, memory, psychomotor activity, insight, judgment, concentration, focus, and impulse control). The ALJ also found that progress notes from Dr. Ravanam exhibited a normal mental status exam and treatment from July 2016. *Id.* (*citing* 500). And, as discussed above, the ALJ relied on the State Agency consultants who included no mental RFC limitations. *Id.* at 885. Based on the analysis of the record, including the lack of support and inconsistency between Ms. Berumen's treatment notes and the record, the ALJ found substantial evidence to discount Ms. Berumen's opinion, and instead

relied on the opinions of the State Agency consultants. *See Rudicel v. Astrue*, 282 F. App'x 448, 452 (7th Cir. 2008) (affirming the ALJ's decision to give greater weight to the state agency consultant over a physician). Based on the ALJ's reasoning, the Court does not find the ALJ committed reversible error in finding Ms. Berumen's opinion and her alleged off-task time unpersuasive. *See also Spring W. v. Saul*, 2021 WL 2529615, at *6 n.5 (N.D. Ill. June 21, 2021) (where "no doctor opined that [claimant] would require an off-task time limitation ... [claimant's] argument that the ALJ should have included an off-task time limitation, lacks merit."). While Pamela takes additionally issue with the hypothetical's posed to the VE,[12] the ALJ has an "final responsibility" for determining a claimant's RFC and need only include limitations supported by the medical record. *See* 20 C.F.R. § 404.1527(d)(2). The ALJ weighed all the evidence, including the supportability and consistency of Ms. Berumen's decision, and minimally articulated their reasoning for the Court to the follow. Thus, the Court finds the ALJ did not commit a reversible error.

Third, Pamela contends the ALJ incorrectly attributed several RFC limitations to the combination of Pamela's mental and physical limitations. Doc. [12] at 6-8; Doc. [21] at 8-11. However, an ALJ is supposed to consider all medically determinable impairments together when assessing the RFC. *See generally* 20 C.F.R. § 404.1545(a)-(c). Here, the ALJ considered all

---

[12] Pamela raises the point that in the hypotheticals posed to the VE, the VE stated employees were allowed a certain amount of off task time, up to 15% of the time. Doc. [12] at 9-10. Pamela contends her RFC should include off task time equivalent to what the VE raised. *Id.* It is claimant's burden to identify "evidence-based restrictions that the ALJ could include in a revised RFC finding on remand". *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). And, "the ALJ was not required to discuss every response the VE gave to hypotheticals the ALJ ultimately discarded." *Clemente A. v. Saul*, 2019 WL 3973117, at *5 (N.D. Ill. Aug. 22, 2019) (*citing Winsted v. Saul*, 923 F.3d 472, 477 (7th Cir. 2019)). Instead, "[t]he Seventh Circuit has made clear that the ALJ is only required to include limitations that are supported by the record in the hypotheticals posed to the VE and in the RFC assessment." *Id.* Here, nothing in the medical record supported a need for a set amount of off task time, thus there was no evidence-based restrictions that Pamela identified. R. 885 (State Agency consultants holding no mental RFC limitation required as Pamela was able to perform all typical tasks of an independent adult). Therefore, the ALJ did not err in omitting off task limitations from Pamela's RFC.

medical evidence in coming to the RFC determination. R. 889-98. In determining whether to include additional mental limitations, the ALJ considered the combined effects of Pamela's mental and physical impairments.[13] *Id.* at 894-95. The ALJ "looked carefully at the entire record" but found "ongoing and consistent mental health treatment which [was] unchanged and also show[ed] points where impairments are discussed as in remission." *Id.* at 895. The ALJ reiterated evidence that Pamela cared for her son, took him to work, did housework, and had no exacerbations of symptoms or medication changes. *Id.* (*citing* 510). Therefore, even with a mild assessment in concentration, persistence, or maintaining pace, no further mental work-related limitation was warranted. *Id.*; *see also Kimberly M.*, 2022 WL 2105892, at *5 ("[T]he ALJ did not need to factor Plaintiff's mental limitations into the RFC, because the ALJ reasonably found that the limitations did not have a significant effect upon Plaintiff's ability to work."). Even so, the ALJ discussed that the limitation to light RFC work does provide for support regarding the mild limitation in concentration, persistence, or pace. *Id.* While the ALJ could have better explained their reasoning around why these physical limitations doubled as mental limitations, the Court finds the ALJ still supported their finding with substantial evidence and can trace the ALJ's reasoning. *See Ray v. Saul*, 861 F. App'x 102, 107 (7th Cir. 2021) ("The ALJ's analysis could well have been better, but

---

[13] Pamela takes particular issue with the fact the ALJ relied on Pamela's ability to drive, but limited RFC to not allow for commercial driving. Doc. [12] at 7-8; Doc. [21] at 9-10 (*citing Monique B. v. Saul*, 2020 WL 4208112, at *6 (N.D. Ill. July 22, 2020)). However, the Court does not find this to be inconsistent. In making the RFC determination, "it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of [their] impairments was credible or exaggerated." *Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022). Here, the ALJ noted that Pamela's driving, when considered with the medical record, showed she had the ability to maintain work without mental RFC limitations. Even so, the ALJ added physical limitations, which had the added benefit of also limiting certain mental tasks that could be taxing on Pamela's ability to maintain concentration, persistence, or pace such as being a commercial driver. R. 894-95. This is not a reversible error.

there is no basis to overturn her determination, especially under the deferential standard controlling our review.").

Fourth and finally, Pamela purports that the ALJ failed to properly evaluate the impact of Pamela's mental limitations on her ability to perform work, as required by the Court's remand order. Doc. [12] at 6-7; Doc. [21] at 8. This is incorrect. The remand order specifically stated the ALJ was to "reevaluate Pamela's RFC, considering the interaction of her many mental and physical problems on her ability to work, and explain the basis of her findings." *Id.* at 992. Here, that is what occurred. The ALJ considered all of Pamela's mental impairments when assessing her RFC. R. 882-98. As detailed, the ALJ reviewed the entirety of Pamela's medical record, including her mental health examinations which exhibited symptoms were stable and controlled through medication, Pamela's testimony, instances where Pamela reported being depressed and irritable, and how the combination of Pamela's mental and physical limitations factored into her RFC limitations. *Id.* When assessing the RFC, the ALJ specifically analyzed Pamela's mental impairments, including that her mental health treatment and medications were unchanged and that there was no record evidence exhibiting an exacerbation of symptoms. *Id.* at 889-98. Thus, the ALJ concluded Pamela was able to do past semi-skilled level work, with the limitations considered for concentration, persistence, and pace, such as light work. *Id.* at 898. The ALJ minimally articulated their analysis and supported it with substantial evidence. *Id.* Thus, the Court does not find grounds to remand.

## **CONCLUSION**

For the reasons stated above, Plaintiff's request for reversal of the ALJ's decision is denied [12], the Commissioner's Motion for Summary Judgment [18] is granted, and the ALJ's decision is affirmed. The Clerk is directed to enter judgment in favor of the Commissioner and against

Plaintiff.

**SO ORDERED.**

Dated:  January 30, 2024

_____
Sunil R. Harjani
United States Magistrate Judge